**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 18, 2024

LAURA A. AUSTIN, CLERK
BY:
    s/A. Beeson
    DEPUTY CLERK

| | | |
|---|---|---|
| **MANDRIEZ SPIVEY,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:20-cv-00400** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Hon. Michael F. Urbanski** |
| **MICHAEL BRECKON, <u>et al</u>.,** | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

Mandriez Spivey, a former federal inmate, filed this civil action against thirteen Bureau of Prisons ("BOP") staff members at USP Lee in Pennington Gap, Virginia, where he was previously incarcerated. Spivey seeks to recover damages for alleged violations of the Fourth, Fifth, and Eighth Amendments to the United States Constitution, pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). The case is presently before the court on the defendants' motion to dismiss. ECF No. 109. For the reason set forth below, the motion is **GRANTED**.

## I.     Background

The following factual allegations are taken from Spivey's third amended complaint. The court accepts them as true for purposes of ruling on the motion to dismiss. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

### A.     Use of Restraints and Other Forms of Force

Spivey was incarcerated at USP Lee from December 2017 to October 2018. During that time, Spivey shared a cell with another inmate. At some point, Spivey saw his cellmate tear up a towel or sheet that was subsequently discovered by a correctional officer. Although

Spivey's cellmate claimed responsibility for the torn item, defendant James Bowles detained Spivey and ordered him to dress in paper clothes for a search, which exposed Spivey's buttocks. Bowles then ordered that Spivey be placed in restraints.

Spivey alleges that defendant Phillip Mullins or defendant William Cantrell "fitted the restraints too tightly, which caused the restraints to cut into [his] wrists, ankles, and sides, resulting in swelling." 3d Am. Compl., ECF No. 68, at 4. Spivey informed defendant Nancy Smith that the restraints were too tight. After checking the restraints, Smith falsely reported that the restraints were not too tight and declined to loosen them. Likewise, defendant James Phelps refused to respond to Spivey's complaints regarding the restraints.

Officers subsequently moved Spivey to a different cell. Spivey alleges that Bowles ordered him to kneel in the cell and then directed Mullins or Cantrell to use force against him. Pursuant to Bowles's instructions, Mullins or Cantrell pressed a shield into Spivey's back while he was on his knees. One of the officers then slammed Spivey's head into a wall, stepped on his toes, and "grinded the edge of the shield into [Spivey's] ankles and calves" while he kneeled on the floor. Id. at 5. After Bowles's shift ended, "Mullins or Cantrell continued to use excessive force." Id.

Spivey alleges that he suffered severe pain, discomfort, and scarring as a result of the overly tight restraints applied by Mullins or Cantrell. Spivey further alleges that he suffered "severe pain and discomfort in his neck, back, calves, Achilles tendon[s], feet, and toes" as a result of the force used by one or both of the officers. Id. at 6. Additionally, Spivey alleges that he "suffered and continues to suffer extreme mental and emotional distress." Id.

Based on the alleged use of excessively right restraints, Spivey claims that Bowles, Mullins, Cantrell, Smith, and Phelps "deprived [Spivey] of his Eighth Amendment rights—or, in the alternative, his Fourth Amendment rights" (Count One). Id. at 11. Spivey also claims that the same defendants violated his Fifth Amendment right to procedural due process by placing him in excessively tight restraints, or approving the use of excessively tight restraints, without "a proper determination that restraints were justified" (Count Two). Id. at 12; see also id. ("Plaintiff had a right under the Fifth Amendment to due process of law before being deprived of liberty."). Spivey asserts similar claims under the Fourth, Fifth, and Eighth Amendments against Bowles, Mullins, and Cantrell based on the other forms of force that were allegedly used against him "absent a proper determination that use of force was justified" (Counts Three and Four). Id. at 13–14.

### B.    Denial of Medical Treatment for Pain

Spivey alleges that he suffered severe pain in his Achilles tendons and calves as a result of the force used by Mullins and/or Cantrell, and that he notified Wanda McIntyre, a nurse, that he needed medical care. Spivey alleges that McIntyre denied his request for medical care and that he continued to experience severe discomfort in his Achilles tendons and calves for the remainder of his confinement at USP Lee. Based on these allegations, Spivey claims that McIntyre deprived him of his right to adequate medical treatment in violation of the Eighth Amendment (Count Five).

### C.    Denial of Dental Treatment

Before being transferred to USP Lee, Spivey was diagnosed with dental caries ("commonly known as tooth decay") and pulpitis ("commonly known as tooth

inflammation"). <u>Id.</u> at 6. Spivey did not receive treatment for either dental issue prior to his transfer. Following his transfer to USP Lee, Spivey began experiencing severe tooth pain. When Spivey complained to Karen Pease about his dental problems, Pease informed that him that USP Lee did not have a staff dentist. Spivey alleges that Pease placed him on a waiting list for dental care but did not "provide any further medical or dental care for [his] dental issues." <u>Id.</u> at 7.

At some point thereafter, while housed in the solitary housing unit at USP Lee, Spivey informed Warden Michael Breckon that he needed treatment for severe tooth pain. Spivey alleges that Brecken "knew or should have known that USP Lee did not have a staff dentist" and that Breckon failed to procure one, "resulting in an inadequate waiting list for dental care." <u>Id.</u> While Spivey was waiting for dental treatment, he broke a tooth and removed the remaining portion of the broken tooth himself, which caused severe pain. Nonetheless, Spivey did not receive any dental care until after being transferred to a different BOP facility. Based on these allegations, Spivey claims that Pease and Breckon deprived him of adequate treatment for his dental issues, in violation of the Eighth Amendment (Count Six).

### D.   Denial of Medical Treatment for Rectal Bleeding and Stomach Pain

Spivey alleges that he also experienced rectal bleeding and stomach pain during his period of incarceration at USP Lee. Spivey reported these issues to Thomas Kirby, who "administered a feces test but refused to allow [Spivey] to talk to a doctor." <u>Id.</u> at 8. Spivey alleges that he did not receive any additional medical care for the rectal bleeding or stomach pain. He claims that Kirby denied him adequate medical treatment in violation of the Eighth Amendment (Count Seven).

### E.     Denial of Mental Health Care

Spivey next alleges that he has "a history of significant mental health issues, including, upon information and belief, a rule-out diagnosis for major depressive disorder (recurrent and severe)." <u>Id.</u> at 9. During his period of incarceration at USP Lee, Spivey requested mental health care. He alleges that Jessica Babnew, Lauren Bailey, and Tanya Cunic denied his requests and that he "did not receive any mental health care for the duration of his stay at USP Lee." <u>Id.</u> at 9. Spivey claims that Babnew, Bailey, and Cunic violated his Eighth Amendment right to adequate medical treatment (Count Eight).

### F.     Unnecessary Force During Pat-Down Searches

Spivey also alleges that he was subjected to unnecessary force during pat-down searches performed by Mark Moore. According to Spivey, "Moore slid his knuckle down [Spivey's] buttock" during the searches, and he "repeated this behavior on numerous occasions." <u>Id.</u> at 10. Spivey claims that Moore violated "his Eighth Amendment rights—or, in the alternative, his Fourth Amendment rights—by repeatedly using excessive physical contact during pat-down searches for the sadistic purpose of causing [Spivey] emotional and mental distress" (Count Nine). <u>Id.</u> at 19.

### G.     Attempts to Exhaust Administrative Remedies

In a separate section of the third amended complaint, Spivey alleges that he "attempted to file administrative remedy requests" to report the various uses of force and to report the denial of adequate medical, dental, and mental health treatment. <u>Id.</u> at 10. Spivey alleges that "USP Lee administrators identified as Ms. Bowles, Pendergrass, and Bentley prevented [him]

from doing so by either refusing to file his administrative remedy requests or claiming to have lost his administrative remedy request forms." Id. at 10 (internal quotation marks omitted).

## II.    Procedural History

Spivey commenced this action in July 2020 by filing a pro se complaint under Bivens. Counsel appeared on his behalf in November 2021 and filed the operative third amended complaint on November 16, 2022. On March 17, 2023, the defendants moved to dismiss the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed by the parties, and the court conducted a hearing on the motion on December 12, 2023.

## III.    Standard of Review

Rule 12(b)(6) permits defendants to seek dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." Erickson, 551 U.S. at 94.

## IV.    Discussion

Based on recent Supreme Court and Fourth Circuit precedent, the defendants contend, among other arguments, that a Bivens remedy is unavailable for the constitutional claims

asserted in the third amended complaint. For the following reasons, the court is constrained to agree.

The Constitution of the United States "does not expressly provide for money damages for constitutional wrongs." Quinones-Pimentel v. Cannon, 85 F.4th 63, 68 (1st Cir. 2023); see also Ameur v. Gates, 759 F.3d 317, 325–326 (4th Cir. 2014) ("The Constitution does not require the availability of such a remedy, even where the plaintiff's claim is based on alleged violations of constitutional rights.") (internal quotation marks omitted). Likewise, no federal statute authorizes plaintiffs to bring claims for damages against federal officials based on alleged constitutional violations. Although 42 U.S.C. § 1983 authorizes plaintiffs to bring such claims against state officials, "there is no statutory counterpart to sue federal officials." Mays v. Smith, 70 F.4th 198, 202 (4th Cir. 2023).

In its 1971 decision in Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). The Court held "that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 741 (2020). Although the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it could authorize a remedy under general principles of federal jurisdiction." Ziglar v. Abbasi, 582 U.S. 120, 131 (2017) (quoting Bivens, 403 U.S. at 396).

In the decade following <u>Bivens</u>, the Supreme Court recognized an implied action for damages for constitutional violations by federal officials two more times. In <u>Davis v. Passman</u>, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to adequately treat the prisoner's asthma. "These three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar</u>, 582 U.S. at 131.

After those decisions, "the Supreme Court changed course and started to chisel away at the <u>Bivens</u> doctrine." <u>Sargeant v. Barfield</u>, 87 F.4th 358, 363 (7th Cir. 2023). In the more than four decades since <u>Carlson</u>, the Supreme Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." <u>Egbert v. Boule</u>, 596 U.S. 482, 486 (2022) (collecting cases). "And in the past six years in particular, the Supreme Court has 'handed down a trilogy of opinions not only expressing regret over its <u>Bivens</u> cases but also demonstrating hostility to any expansion of them.'" <u>Mays</u>, 70 F.4th at 202 (quoting <u>Tate v. Harmon</u>, 54 F.4th 839, 843 (4th Cir. 2022)). The Court's recent decisions explain that it has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" <u>Egbert</u>, 596 U.S. at 491 (quoting <u>Hernandez</u>, 140 S. Ct. at 741). "At bottom, creating a cause of action is a legislative endeavor," and "the Judiciary's authority to do so at all is, at best, uncertain." <u>Id.</u>

Although the Supreme Court has not overruled its three <u>Bivens</u> cases, "the Court has noted that the outcomes 'might have been different if [those cases] were decided today.'" <u>Mays</u>, 70 F.4th at 202 (quoting <u>Ziglar</u>, 582 U.S. at 134); <u>see also</u> <u>Egbert</u>, 596 U.S. at 500–01 (emphasizing that the Court's prior decision in <u>Davis v. Passman</u> "carries little weight because it predates [the Court's] current approach to implied causes of action and diverges from the prevailing framework in three important ways"). "The Court has made clear that expanding the <u>Bivens</u> remedy to a new context is an 'extraordinary act," <u>Mays</u>, 70 4.th at 202 (quoting <u>Egbert</u>, 596 U.S. at 496 n.3," which "will be unavailable 'in most every case,'" <u>id.</u> (quoting <u>Egbert</u>, 596 U.S. at 492). And it has "severely limit[ed] the reach of <u>Bivens</u> by imposing a highly restrictive two-step analysis for <u>Bivens</u> cases." <u>Bulger v. Hurwitz</u>, 62 F.4th 127, 137 (4th Cir. 2023).

In determining whether a <u>Bivens</u> remedy is available in a particular case, a court must first decide "whether the case presents a new <u>Bivens</u> context—<u>i.e.</u>, is it meaningfully different from the three cases in which the Court has implied a damages action." <u>Egbert</u>, 596 U.S. at 492 (internal quotation marks and brackets omitted). "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if <u>even one</u> distinguishing fact has the potential to implicate separation-of-power considerations." <u>Tate</u>, 54 F.4th at 846 (citing <u>Egbert</u>, 596 U.S. at 492). Examples of factors that would support finding a new context include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other

branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider.

<u>Ziglar</u>, 582 U.S. at 139–40. "A meaningful difference can also include a new category of defendants." <u>Quinones-Pimentel</u>, 85 F.4th at 70 (citing <u>Egbert</u>, 596 U.S. at 492). Although the Supreme Court has recognized that "some differences . . . will be so trivial that they will not suffice to create a new <u>Bivens</u> context," <u>Ziglar</u>, 582 U.S. at 149, "[t]he Court has made clear that . . . a radical difference is not required," <u>Tun-Cos v. Perrotte</u>, 922 F.3d 514, 523 (4th Cir. 2019).

If the court "finds that a claim presents a 'new context' different from the three <u>Bivens</u> cases, it must 'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting an extension' of <u>Bivens</u>."[1] <u>Bulger</u>, 62 F.4th at 137 (quoting <u>Hernandez</u>, 140 S. Ct. at 743). This inquiry "must focus on 'separation-of-powers principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." <u>Id.</u> (quoting <u>Hernandez</u>, 140 S. Ct. at 743). As the Supreme Court recently reiterated in <u>Egbert</u>:

> If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it. Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case, no <u>Bivens</u> action may lie.

---

[1] If the court finds that a case is not different in any meaningful way from <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u> (and thus presents no new context), the analysis ends and a <u>Bivens</u> remedy continues to be available. <u>Tun-Cos</u>, 922 F.3d at 522–23.

596 U.S. at 491–92 (internal quotation marks, citations, and brackets omitted). For instance, if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the court cannot second-guess that calibration by superimposing a Bivens remedy." Id. at 498. "That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" Id. (quoting Bush v. Lucas, 462 U.S. 367, 372 (1983)).

In Egbert, the Supreme Court "recognized a substantial overlap between the factors relevant to whether a purported Bivens claim arose out of a 'new context' and the special factors that counsel hesitation for any extension." Tate, 54 F.4th at 847–48 (citing Egbert, 596 U.S. at 493). The Court explained that while its cases "describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert, 596 U.S. at 492. "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Id. (quoting Hernandez, 140 S. Ct. at 743).

With this background in mind, the court turns to Spivey's claims for alleged violations of the Eighth Amendment, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment.

## A.    New Context

The court first considers whether Spivey's claims present a new Bivens context. This step of the analysis can be easily resolved with respect to Spivey's claims for alleged violations of the Fourth and Fifth Amendments, and his Eighth Amendment claims of excessive force. Turning first to the Fifth Amendment due process claims, the Fourth Circuit's recent decision

11

in Mays v. Smith compels the conclusion that such claims arise in a new context. As explained therein, "[t]he only Fifth Amendment-based Bivens claim that the Supreme Court has recognized was the one in Davis, which concerned alleged sex discrimination on Capitol Hill." 70 F.4th at 203 (internal quotation marks omitted). The Supreme Court has never authorized a Bivens claim for due process violations. Id.; see also Annappareddy v. Pascale, 996 F.3d 120, 134 (4th Cir. 2021) ("As the district court correctly recognized, Bivens has never been extended to a Fifth Amendment due process claim.") (internal quotation marks omitted). Moreover, as in Mays, Spivey's Fifth Amendment claims "are brought against a 'new category of defendants'—prison officials, as opposed to a former Congressman in Davis—operating in a different legal and factual context (prisoner litigation)." Mays, 70 F.4th at 203 (quoting Tate, 54 F.4th at 846). The mere fact that Davis involved the same constitutional amendment is "insufficiently granular for the new-context inquiry." Id. The Supreme Court has made clear that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez, 140 S. Ct. at 743. For these reasons, Spivey's Fifth Amendment claims clearly present a new context. Mays, 70 F.4th at 205.

For similar reasons, the court concludes that Spivey's claims for violations of the Fourth Amendment's prohibition against unreasonable searches and seizures seek to extend Bivens to a new context. Although Bivens also involved Fourth Amendment claims, Spivey's claims differ in meaningful ways. In Bivens, the plaintiff alleged that federal narcotics agents violated his Fourth Amendment rights by entering his apartment and arresting him for alleged narcotics violations without probable cause, searching the apartment without a warrant, and

subjecting him to a visual strip search. Bivens, 403 U.S. at 389–90. Here, Spivey seeks to recover damages for actions that allegedly occurred in prison. While convicted prisoners "retain an interest in some degree of bodily privacy and integrity," King v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016), their rights under the Fourth Amendment are more limited than those enjoyed by non-prisoners. See Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020) (en banc) (holding that "the Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit it in a significantly limited way"); Padgett v. Donald, 401 F.3d 1273, 1278–79 (11th Cir. 2005) (explaining that prisoners "do not enjoy the same Fourth Amendment rights as free persons"); Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992) (noting that the same Fourth Amendment protections afforded to free persons "do not hold true for those lawfully confined to the custody of the state"). Thus, the context in which Spivey's claims arise is meaningfully different. Additionally, the claims are asserted against a different category of defendants—prison officials, as opposed to federal narcotics agents. Mays, 70 F.4th at 203; see also Tun-Cos, 922 F.3d at 525 (citing this factor in determining that a Fourth Amendment claim against Immigration and Customs Enforcement agents was meaningfully different from the Fourth Amendment claims in Bivens). Consequently, Spivey's Fourth Amendment claims seek to extend Bivens to a new context.

The same is true for Spivey's Eighth Amendment claims of excessive force. The Supreme Court has never recognized a Bivens cause of action for federal inmates who claim that officers used excessive force against them. Although Carlson extended Bivens to an Eighth Amendment claim, "[t]he Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under Bivens, Davis, or Carlson,"

and the Fourth Circuit has recently "headed that warning" in two published decisions in which plaintiffs relied on Carlson to support the existence of a Bivens remedy. Bulger, 62 F.4th at 137–38 (concluding that Eighth Amendment "failure to protect and intervene claims are not authorized by Carlson but instead present a new context"); Tate, 54 F.4th at 847 (concluding that an Eighth Amendment "conditions-of-confinement claim is not authorized by Carlson but instead arises in a 'new context'"). As noted above, "Carlson involved a prison official's deliberate indifference to an inmate's health by failing to provide medical care after the inmate suffered a severe asthma attack, allegedly leading to the inmate's death." Bulger, 62 F.4th at 138 (citing Carlson, 446 U.S. at 16). Consistent with Bulger, Tate, and other recent decisions, the court concludes that Spivey's allegations of being subjected to excessively tight restraints and other forms of physical force are sufficiently different to constitute a new context. See Chambers v. Herrera, 78 F.4th 1100, 1107 (9th Cir. 2023) (concluding that an Eighth Amendment claim "rooted in excessive force . . . represents a new Bivens context because it is distinct from the three actions recognized in Bivens, Davis, and Carlson"); Silva v. United States, 45 F.4th 1134, 1137 (10th Cir. 2022) (noting that a federal inmate's claim of excessive force "would require an expansion of Bivens to move forward even though it originates under the Eighth Amendment"); Ball v. Streeval, 655 F. Supp. 3d 436, 442 (W.D. Va. 2023) (concluding that similar allegations of excessive force presented a new context).[2]

---

[2] Other appellate courts have recently held that an Eighth Amendment claim arising from the alleged use of excessive force presents a new context and that special factors counsel against extending a Bivens remedy. See Landis v. Moyer, No. 22-2421, 2024 WL 937070, at *2 & n.7 (3d Cir. Mar. 5, 2024) (citing Farrington v. Diah, No. 22-13281, 2023 WL 7220003, at *1–2 (11th Cir. Nov. 2, 2023); Patton v. Blackburn, No. 21-5995, 2023 WL 7183109, at *2 (6th Cir. May 2, 2023); Greene v. United States, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022)).

During the hearing on the defendants' motion, the parties focused primarily on the issue of whether Spivey's Eighth Amendment claims for the denial of medical, dental, and mental health treatment involve a new context. These claims arguably present a closer question in light of Carlson and the various post-Egbert cases cited in support of the parties' respective positions. Nevertheless, having carefully considered the Supreme Court's most recent Bivens guidance, the court is compelled to conclude that there are meaningful differences between this case and Carlson, such that Spivey's claims present a new context. To be sure, the claim authorized in Carlson was "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment." Hernandez, 140 S. Ct. at 741. "However, the Supreme Court has made clear that courts should not interpret Carlson to apply outside the precise context at issue in that case, noting that even claims challenging the adequacy of medical care may involve the same 'right and . . . mechanism of injury' as in Carlson but still present 'different' contexts." Bulger, 62 F.4th at 138 (emphasis added) (quoting Ziglar, 582 U.S. at 139). As the Fourth Circuit recently emphasized, the first step of the Bivens analysis presents "a low bar because even 'quite minor' differences between a proposed claim and the claims in the three existing Bivens cases can amount to a new context." Mays, 70 F.4th at 203 (quoting Tun-Cos, 922 F.3d at 523); see also Ziglar, 582 U.S. at 147 (noting that "even a modest extension [of Bivens, Davis, or Carlson] is still an extension"). Thus, "even where a case involves 'similar allegations' or 'almost parallel circumstances,' such 'superficial' similarities 'are not enough to support the judicial creation of a cause of action.'" Mays, 70 F.4th at 204 (quoting Egbert, 596 U.S. at 495).

Against this backdrop, the court concludes that Spivey's case is meaningfully different from Carlson in at least two respects. First, the case is distinguishable from a factual

15

standpoint. See Quinones-Pimentel, 85 F.4th at 70 (noting that "the relevant analysis involves a factual comparison" and that the facts "cannot be viewed generally") (citing Egbert, 596 U.S. at 495; Mays, 85 F.4th at 204; and Tun-Cos, 922 F.3d at 524). In Carlson, a prisoner with chronic severe asthma died after federal prison officials allegedly kept him in a grossly inadequate medical facility against the advice of doctors, failed to give him competent care for eight hours after he suffered an asthma attack, administered contraindicated drugs that made the attack more severe, attempted to use a respirator known to be inoperative that further impeded his breathing, and unduly delayed transferring him to a hospital. Carlson, 446 U.S. at 16 n.1. Here, Spivey alleges that he was denied medical treatment for leg pain resulting from the use of force; that he was placed on a waiting list for dental treatment but did not see a dentist during the ten-month period that he was incarcerated at USP Lee; that his requests for mental health treatment during that period were denied; and that he underwent a fecal test but did not receive any other medical care for complaints of stomach pain and rectal bleeding, neither of which is alleged to have been the symptom of a subsequently diagnosed, serious medical condition. While the court does not discount the pain, discomfort, and emotional distress that Spivey experienced at USP Lee, there are clearly more than trivial differences between the facts alleged in this case and those alleged in Carlson. See, e.g., Anderson v. Fuson, No. 23-5342, 2024 U.S. App. LEXIS 2299, at *8 (6th Cir. Feb. 1, 2024) (concluding that an inmate's allegations of inadequate medical care for injuries resulting from the use of restraints "differ markedly from a prisoner dying after an asthma attack where his asthma was not properly treated"); Smith v. Sines, No. 5:20-cv-00154, 2023 U.S. Dist. LEXIS 89382, at *11 (N.D.W. Va. Jan. 26, 2023) (joining "two other district cases from the Fourth Circuit which

found that a case involving non-emergent, nonfatal medical treatment is a different context than that found in <u>Carlson</u>, which involved an emergency resulting in death"); <u>Washington v. Fed. Bureau of Prisons</u>, No. 5:16-cv-3913, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (finding that claims of inadequate medical treatment arose in a new context since they did "not involve a medical emergency, as did <u>Carlson</u>," and instead challenged the sufficiency of the treatment provided for a "chronic, non-fatal condition"); <u>Sharp v. United States Marshals Serv.</u>, No. 5:20-cv-03282, 2022 WL 3573860, at *7 (E.D.N.C. July 15, 2022) (emphasizing that a plaintiff's "alleged injuries—dental pain, infected and bleeding gums, and a tooth breaking into pieces—[were] vastly different from those in <u>Carlson</u>").

Additionally, and perhaps more importantly, the Supreme Court has "explained that a new context arises when there are 'potential special factors that previous <u>Bivens</u> cases did not consider.'" <u>Egbert</u>, 596 U.S. at 492 (quoting <u>Ziglar</u>, 582 U.S. at 140). As discussed in the following section, special factors counsel against recognizing a <u>Bivens</u> remedy in this case, including the existence of alternative remedial mechanisms such as "suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program." <u>Malesko</u>, 534 U.S. at 74. Because these special factors were not considered by the Supreme Court in <u>Carlson</u>, this further compels the conclusion that Spivey's claims present a new context. <u>See Ziglar</u>, 582 U.S. at 148 (noting that the case before the Court had "certain features that were not considered in the Court's previous <u>Bivens</u> cases and that might discourage a court from authorizing a <u>Bivens</u> remedy," including the fact that "there might have been alternative remedies available," such as "an injunction" or "some other form of equitable relief"); <u>see also Logsdon v. United States Marshal Serv.</u>, 91 F.4th 1352, 1360 (10th Cir. 2024)

(explaining that the fact that <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> did not consider the alternative remedy afforded by the Department of Justice's Office of the Inspector General investigation procedure was "dispositive," since "the Supreme Court has said that a departure from the <u>Bivens</u> precedents may be justified by 'the presence of potential special factors that previous <u>Bivens</u> cases did not consider'") (quoting <u>Ziglar</u>, 582 U.S. at 140); <u>Sargeant</u>, 87 F.4th at 366 (emphasizing that "when special factors are relevant, they play a part in both steps of the [<u>Bivens</u>] inquiry).

In short, while this case and <u>Carlson</u> both involve allegations of inadequate medical care at a federal prison, "these superficial similarities are not enough to support the judicial creation of a cause of action." <u>Egbert</u>, 596 U.S. at 495. Under the more recent <u>Bivens</u> jurisprudence, the differences identified above are sufficient to establish that Spivey's claims of inadequate treatment involve new contexts.[3] <u>See</u> <u>Ziglar</u>, 582 U.S. at 149 ("Given this Court's expressed caution about extending the <u>Bivens</u> remedy, the new-context inquiry is easily

---

[3] The court notes that the Fourth Circuit's 2023 decision in <u>Langford v. Joyner</u> does not compel a different conclusion. Although that case also involved Eighth Amendment claims of inadequate medical care brought against federal prison officials under <u>Bivens</u>, neither the district court nor the Fourth Circuit addressed the issue of whether the case sought to extend <u>Bivens</u> (or <u>Carlson</u>) to a new context. <u>See</u> <u>Langford v. Joyner</u>, No. 5:21-cv-00811, 2021 WL 4841248 (D.S.C. Oct. 18, 2021), <u>aff'd</u>, 62 F.4th 122 (4th Cir. 2023). Instead, the defendants argued that the inmate's conclusory and collective allegations failed to plausibly allege deliberate indifference on the part of each defendant as required to state an Eighth Amendment claim, and the Fourth Circuit affirmed the dismissal of the complaint on that ground. <u>Langford</u>, 62 F.4th at 124–27. As the Supreme Court and the Fourth Circuit have explained, "courts often decide 'particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions . . . are not binding in future cases that directly raise the questions.'" <u>United States v. Norman</u>, 935 F.3d 232, 241 (4th Cir. 2019) (quoting <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 272 (1990)). Thus, even if <u>Langford</u> could be read to assume that a <u>Bivens</u> remedy was available, such "an unchallenged and untested assumption is simply not a holding that binds future courts." <u>Id.</u>; <u>see also</u> <u>Puentes-Fernandez v. Keisler</u>, 502 F.3d 337, 343 n.2 (4th Cir. 2007) (emphasizing that courts "are bound by holdings, not unwritten assumptions"); <u>Sargeant</u>, 87 F.4th at 365 ("A silent assumption cannot generate binding precedent. That's especially true in the realm of <u>Bivens</u>, where the Supreme Court has repeatedly cautioned against implying new remedies.") (footnote omitted).

satisfied.") <u>Ziglar</u>, 582 U.S. at 149; <u>see also</u> <u>Egbert</u>, 596 U.S. at 501 (explaining that "a plaintiff cannot justify a <u>Bivens</u> extension based on 'parallel circumstances' with <u>Bivens</u>, [<u>Davis</u>], or <u>Carlson</u> unless he satisfies the 'analytic framework' prescribed by the last four decades of intervening law").

For these reasons, the court concludes that there are meaningful differences between this case and the Supreme Court's three <u>Bivens</u> cases. Accordingly, the court must proceed to the second step of the analysis for each of Spivey's claims.

## B.    Special Factors

At the second step, the court must determine whether any special factors counsel against extending the <u>Bivens</u> remedy to the new contexts presented by a plaintiff's claims. <u>Ziglar</u>, 582 U.S. at 136. This inquiry "does not invite federal courts to independently assess the costs and benefits of implying a cause of action." <u>Egbert</u>, 596 U.S. at 496. Instead, "even a single reason to pause before applying <u>Bivens</u> in a new context" is sufficient to preclude relief, since "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." <u>Id.</u> at 492. Under current Supreme Court and Fourth Circuit precedent, there are at least two reasons to pause before authorizing a <u>Bivens</u> action for any of Spivey's claims.

First, "alternative remedies" exist for aggrieved inmates that "independently foreclose a <u>Bivens</u> action here." <u>Id.</u> at 497. For instance, the BOP's Administrative Remedy Program ("ARP") allows all federal inmates to seek formal review of an issue related to "any aspect" of their confinement. <u>Bulger</u>, 62 F.4th at 140 (quoting 28 C.F.R. § 542.10(a)). Consequently, the ARP provides an alternative "'means through which allegedly unconstitutional actions and

policies can be brought to the attention' of the BOP." Id. (quoting Malesko, 534 U.S. at 74). Inmates may also seek injunctive relief for alleged constitutional violations. See Malesko, 534 U.S. at 74 (explaining that injunctive relief has "long been recognized as the proper means for preventing entities from acting unconstitutionally" and that the availability of administrative and injunctive relief was a factor counseling against extending Bivens to an Eighth Amendment claim brought against the operator of a private prison facility).

The court recognizes that these alternative remedies do not permit an award of damages and that Spivey has alleged that prison officials prevented him from taking advantage of the ARP. However, Egbert and the Fourth Circuit's post-Egbert decisions make clear that "the question of whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts," Egbert, 596 U.S. at 498, and that "[t]he potential unavailability of a remedy in a particular circumstance does not warrant supplementing that scheme," Mays, 70 F.4th at 205–06 (quoting Bulgar, 62 F.4th at 141). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy." Egbert, 596 U.S. at 498. This is true even if the court believes that the remedial process is "not as effective as an individual damages remedy," id., or that it does not provide an adequate remedy in a "particular case," id. at 496.[4] See also United States v. Stanley, 483

---

[4] With respect to the latter point, Egbert explained that applying "the special factors analysis at such a narrow level of generality" would "impair governmental interests, and thereby frustrate Congress' policymaking role." Egbert, 596 U.S. at 496 (internal quotation marks and brackets omitted). The "proper approach" instead requires a court to "ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." Id. (internal quotation marks and brackets omitted). "If so, or even if there is the potential for such consequences, a court cannot afford a plaintiff a Bivens remedy." Id. (internal quotation marks omitted).

U.S. 669, 683 (1987) (emphasizing that "it is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [a particular plaintiff] an 'adequate' federal remedy for his injuries"); Bulger, 62 F.4th at 141 (concluding that the existence of the ARP counseled against extending Bivens to Eighth Amendment claims filed by the estate of a deceased inmate, even though the inmate allegedly "had no real opportunity to initiate any sort of formal grievance process" before being killed by another inmate); Sargeant, 87 F.4th at 368 (rejecting, in light of Egbert, an inmate's argument that the ARP was "functionally unavailable to him" since a prison official had retaliated against him for filing a grievance and he had since been transferred to another facility); Chambers, 78 F.4th at 1107 n.3 (noting that the fact that an alternative remedy "existed at all" for federal inmates was the factor that must be considered under Egbert and that it made "no difference" that the plaintiff was no longer incarcerated); Landis v. Moyler, No. 22-2421, 2024 WL 937070, at *3 (3d Cir. Mar. 5, 2024) ("Egbert dictates that we may not consider the balance of circumstances in a 'particular case' (here, possible retaliation for use of the BOP Program), 596 U.S. at 496, in determining whether an alternate remedy is available.").

Second, "legislative action suggesting that Congress does not want a damages remedy" counsels hesitation in recognizing a cause of action under Bivens. Ziglar, 582 U.S. at 148. Approximately fifteen years after Carlson was decided, Congress enacted the PLRA, which "was designed to limit litigation brought by prisoners and remove the federal district courts from the business of supervising the day-to-day operations of prisons." Bulger, 62 F.4th at 141 (internal quotation marks and citations omitted). "Importantly, the Act does not provide for a standalone damages remedy against federal jailers, a silence that speaks volumes and

counsels strongly against judicial usurpation of the legislative function to create one." Mays, 70 F.4th at 206 (internal quotation marks and citations omitted). Consequently, "because Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, the existence of the ARP and the PLRA counsel hesitation in extending Bivens" to Spivey's claims. Bulger, 62 F.4th at 141 (emphasis added).

Under Egbert, it is clear that the existence of "even one" special factor is sufficient to preclude relief under Bivens. 596 U.S. at 496. In this case, at least two special factors counsel against extending a Bivens remedy, neither of which was considered in the Supreme Court's three Bivens cases. This means that, at step one, Spivey's claims present a new context. Sargeant, 87 F.4th at 368; see also Tate, 54 F.4th at 846 ("The Supreme Court has instructed . . . that a new context may arise if even one distinguishing fact has the potential to implicate separation-of-powers considerations.") (citing Egbert, 595 U.S. at 496). It also means that, at step two, the court has "reason to think that Congress might be better equipped to create a damages remedy." Egbert, 596 U.S. at 492. Consequently, "the court must decline to extend Bivens" to the claims asserted in this case. Mays, 70 F.4th at 202–03. In sum, the court is convinced that this result is compelled by existing precedent.

## V.    Conclusion

For the reasons stated, the court concludes that a Bivens remedy is unavailable for Spivey's constitutional claims. Accordingly, the defendants' motion to dismiss is **GRANTED**. An appropriate order will be entered.

Entered: March 18, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.03.18 17:24:23
-04'00'

Michael F. Urbanski
Chief United States District Judge